# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| **SANDRA M. DALLAS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:19CV90 HEA** |
| | ) | |
| **ANGELA MESMER,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION, MEMORANDUM AND ORDER

Petitioner filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Doc. No. 1]. Respondent filed a Response to the Court's Order to Show Cause Why Relief Should Not be Granted [Doc. No. 14]. Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court has determined that there are no issues asserted that give rise to an evidentiary hearing, and therefore one is not warranted. For the reasons explained below, the Response to the Court's Order to Show Cause Why Relief Should Not be Granted is well taken, and the Petition will be denied.

## Factual Background

Petitioner was found guilty of three counts of distribution of a controlled substance and one count of first-degree involuntary manslaughter. She was sentenced to three consecutive fifteen-year terms for the distribution convictions,

and a consecutive seven-year term for her manslaughter conviction in the Missouri

Department of Corrections. Petitioner appealed her conviction and sentence to the

Missouri Court of Appeals. Petitioner also filed a post-conviction Rule 29.15

Motion.  The Motion Court denied the motion, as did the Missouri Court of

Appeals.

The Missouri Court of Appeals summarized the relevant facts in its Opinion

affirming the conviction and sentence:

> In autumn 2013, Michelle Boner was dating Travis Welty. On October 19,
> the couple picked up Welty's best friend, Darin Reid, and drove to St.
> Mary's, Missouri, where they looked at a home they thought was for sale.
> Because Welty was a heavy drinker, Boner drove. Welty had approximately
> sixteen beers that day. While at the house, they were approached by
> Defendant, who was looking at the house too.
>
> Defendant told the group about other houses, including her own, that were
> for sale. Boner, Welty, and Reid followed Defendant to approximately six
> other houses, then the four individuals proceeded to Defendant's home,
> Welty and Defendant discussed their respective pain medications. Welty told
> Defendant that he took hydrocodone for his pain. When Reid heard
> Defendant reply that she took methadone, Reid told Defendant, "Give me
> some of the methadone." Defendant replied, "I don't give it away, but I sell
> it."
>
> Defendant had methadone at her residence because she was undergoing
> treatment for heroin addiction. She was admitted to Cape Girardeau Metro
> Treatment Center ("Cape Metro") in November 2011. The treatment center
> program director testified at trial. According to the director, patients are
> advised about risks associated with methadone and about risks that are
> associated with other people using the patient's prescribed methadone. The
> director testified that a major part of her duties was preventing "diversion,"
> i.e., patients giving or selling methadone to someone else. When new
> patients are admitted, they are forbidden from taking methadone home. After
> complying with program guidelines and taking methadone on-site for 90
> days, a patient is allowed to take methadone home for daily dosing. The day

she met Boner, Welty, and Reid, Defendant was permitted to take home thirteen days' worth of medicine once every two weeks. On the fourteenth day, she would take her medicine on site and exchange her empty bottles for new methadone.

Defendant led Boner, Welty, and Reid into her home, where she opened her refrigerator and removed a bottle of methadone. Charging five dollars per capful of the liquid, Defendant poured eleven capfuls, giving one at a time to Welty, Reid, and Boner. Defendant said that a three-cap dose was safe, then gave four to Welty, four to Reid, and two to Boner (who also spilled a capful). Defendant indicated it would be about an hour before they felt the methadone's effects. Because she did not want to be impaired while driving, Boner immediately left with Reid and Welty. She dropped Reid at his home then took Welty to a friend's apartment, where the couple spent the night. Once there, Welty proclaimed he was "fucked up" then passed out.

Welty's chin slumped down to his chest and his breathing became shallow. Boner noted to her host that Welty's breathing "wasn't right" and the host inquired whether he should call 911. At Boner's suggestion, they put Welty on the floor instead. Boner put a blanket atop Welty and he started to snore. Thinking things were better, Boner went to sleep on the couch next to Welty's resting place. Boner slept for about fourteen hours. When she woke, Welty was dead. Boner's host called 911. Medical personnel and police arrived at the scene, but Boner waited until later to notify police about Defendant, Welty, and the methadone.

The coroner, a local mortician, arrived on scene and took Welty's body to the funeral home. Because he found no wounds on Welty's body, the coroner did not order an autopsy. He did, however, take two blood samples from Welty's jugular vein and sent them to an Indianapolis laboratory for testing. Based on the subsequent laboratory report, the coroner concluded Welty's cause of death was mixed drug and alcohol intoxication.

At trial, the State qualified a forensic toxicologist from the Indianapolis laboratory as an expert. The toxicologist testified that Welty's blood alcohol content was .127 and that his blood also contained a muscle relaxant, a blood pressure medication, and an anti-seizure drug. Additionally, methadone was found in Welty's blood at a concentration of 98 nanograms per milliliter.

The toxicologist testified that methadone is a synthetic opioid primarily used for the treatment of chronic pain and to treat withdrawal symptoms for

addicts weaning themselves from heroin and other opiates. He further testified that, unlike heroin, which is a rapidly acting drug, methadone affects the human body over a long period; negative effects from methadone take at least a couple hours to manifest themselves. Methadone, according to the toxicologist, affects the body by suppressing central nervous system activity and can cause "respiratory depression," in which a user's breathing decreases or completely ceases. He also testified that alcohol, like methadone, suppresses central nervous system activity, and when used in combination with methadone creates an "additive effect" in which both drugs augment one another.

Other testimony and evidence concerned the dangers of methadone and of mixing methadone with other drugs. The Cape Metro director reviewed several documents used during Defendant's treatment at Cape Metro. Defendant signed an affirmation promising to read the patient orientation booklet, which warns: "Persons without your level of tolerance cannot safely take methadone. Do not attempt to share or give your take-home medication to another person." The director also explained another form, one she explained to Defendant before Defendant read and signed it. The second form reads, in pertinent part: When taken as prescribed by the medical director these medications are safe. However, you can experience physical problems that might require hospitalization if you use other drugs while taking methadone; for example, the use of painkillers, tranquilizers, anti-depressants, alcohol, or any other central nervous system depressant can cause respiratory distress, hypotension, inadequate blood pressure, over-sedation, coma, and even death. Defendant later signed a third form with an identical warning.

The toxicologist testified that the concentration of 98 nanograms per milliliter of methadone found in Welty's blood was "within a potentially lethal range," and that the same dose of methadone might be fatal to one person and harmless to another. He further indicated that the methadone concentration found in Welty's blood was within the range observed in deaths caused by methadone. According to the toxicologist, the concentration of methadone found in Welty's body may or may not have been fatal if it had not been taken by someone without alcohol in his system. But in Welty's case, the methadone was lethal in combination with the alcohol and other drugs: Welty would not have died without the methadone in his system.

Petitioner now raises four grounds for relief, alleging that (1) counsel was

ineffective for failing to challenge the trial court's ruling on the State's Motion in Limine; (2) she received an excessive sentence; (3) she has new evidence; and (4) cruel and unusual sentencing due to prejudice.

Petitioner's first ground for relief was raised on appeal from the denial of her State Motion for Post-Conviction Relief, and the Missouri Court of Appeals denied it on the merits. Petitioner's remaining grounds for relief were never raised in state court.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA") applies to all petitions for habeas relief filed by state prisoners after the statute's effective date of April 24, 1996. When reviewing a claim that has been decided on the merits by a state court, AEDPA limits the scope of judicial review in a habeas proceeding as follows:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In construing AEDPA, the United States Supreme Court, in *Williams v. Taylor*, held that:

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000).

Furthermore, the *Williams* Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 409.

A state court decision must be left undisturbed unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, or the decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. *Colvin v. Taylor*, 324 F.3d 583, 586-87 (8th Cir. 2003).

A decision is contrary to United States Supreme Court precedent if it decides a case based on a different rule of law than the rule dictated by United States Supreme Court precedent, or it decides a case differently than the United States Supreme Court did on materially indistinguishable facts. *Id*. A decision may only

be overturned, as an unreasonable application of clearly established United States Supreme Court precedent, if the decision is both wrong and an objectively unreasonable interpretation or application of United States Supreme Court precedent. *Id*. A federal habeas court may not disturb an objectively reasonable state court decision on a question of federal law even if the decision is, in the federal court's view, wrong under Eighth Circuit precedent, and even if the habeas court would have decided the case differently on a clean slate. *Id*. State court factual determinations are presumed to be correct and this presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## Statute of Limitations

Congress provides a one-year window in which a habeas applicant can file a petition for writ of habeas corpus.  That window opens at the conclusion of direct review.  The window closes a year later.  Failure to file within that one-year window requires the court to dismiss the petition for writ of habeas corpus. 28 U.S.C. §2244(d) (1) (A); *See Cross-Bey v. Gammon*, 322 F.3d 1012 (8th Cir.), *cert. denied*, 540 U.S. 971 (2003). If an inmate does not seek a writ of certiorari on direct review, direct review concludes when the time limit for seeking further review expires. *Gonzales v. Thaler*, 132 S. Ct. 641, 653-54 (2012). Under Missouri Supreme Court Rule 30.01, Rule 30.03, Rule 81.04, and Rule 81.08, the time limit for filing a notice of appeal is ten days after sentencing.

### Ineffective Assistance of Counsel

To prevail on her ineffective assistance of counsel claim, Petitioner must show that her attorney's performance fell below an objective standard of reasonableness and that she was prejudiced thereby. See *Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct fell within the wide range of professionally reasonable assistance. *Id*. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013) (quotation marks and citation omitted); see also *Strickland,* 466 U.S. at 689 (noting that a petitioner must show that the challenged action was not part of a sound trial strategy); *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (explaining that reviewing courts must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions") (citation omitted)).

To establish "prejudice," the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility*, 773

F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although *Strickland* requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective – [courts] need not make a determination regarding deficiency*." Holder v. United States*, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).

> First, under *Strickland*, the state court must take a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. *Strickland*, 466 U.S. 696. ... To satisfy *Strickland*, the likelihood of a different result must be "substantial, not just conceivable." *Id*. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. [*Harrington v. Richter*, 562 U.S. 86, 112, 101 (2011)]. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at [102.]

*Williams*, 695 F.3d at 831-32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

In this context, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

## Procedural Default

To preserve a claim for federal habeas review, a state prisoner "must present that claim to the state court and allow that court an opportunity to address [her] claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at...trial created a possibility of prejudice, but that they worked to [her] *actual* and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions.'" *Id.* at 494, (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Lastly, in order to assert the fundamental miscarriage of justice exception,

10

a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011), (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## Discussion

Review under 28 U.S.C. § 2254 is a review to determine whether a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Here, Petitioner states four grounds for relief.

### <u>Ground One</u> – Counsel was Ineffective for Failing to Challenge Trial Court's Ruling on State's Motion in Limine

In Ground One, Petitioner argues direct appeal counsel was ineffective for failing to challenge the trial court's ruling on the State's Motion in Limine. Specifically, she argues that appellate counsel was ineffective for failing to raise a claim regarding the trial court's ruling prohibiting the introduction of evidence of an alternative suspect. She raised this claim in her post-conviction relief proceedings, and the Missouri Court of Appeals denied it on the merits. Such denial is entitled to deference by this Court. *Williams,* 695 F.3d at 831; 28 U.S.C. § 2254(d).

In reviewing whether a state court's application of federal law was unreasonable, the district courts review the legal conclusion reached by the court, not merely its rationale. *Williams*, 695 F.3d at 831. Where there is no conspicuous misapplication of on-point Supreme Court precedent, the proper question is

11

whether there is "any reasonable argument" that the state court's judgment is

consistent with federal law. *Id.* "The state court need not cite or even be aware of

the governing Supreme Court cases, 'so long as neither the reasoning nor the result

of the state-court decision contradicts them.'" *Brown v. Luebbers*, 371 F.3d 458,

461 (8th Cir. 2004) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)). Although the

Missouri Court of Appeals did not specifically identify *Strickland* as the standard

to apply regarding this claim, the use and application of its standard was not

unreasonable or contrary to clearly established federal law. The Missouri Court of

Appeals explained:

> The movant alleges ineffective assistance of appellate counsel. To prevail,
> the movant must establish that counsel failed to raise a claim of error that
> would have required reversal had it been raised, and that was so obvious that
> competent and effective counsel would have recognized and asserted it.
> *Tisius v. State*, 183 S.W.3d 207, 215 (Mo. banc 2006); *Rutlin v. State*, 435
> S.W.3d 126, 133 (Mo. App. E.D. 2014). The alleged error must have been
> sufficiently serious to create a reasonable probability that, had counsel raised
> the error, the outcome of the appeal would have been different. *Tisius*, 183
> S.W.3d at 215; *Schallon*, 435 S.W.3d at 124.

> A strong presumption exists that counsel made all significant decisions in
> the exercise of her reasonable professional judgment. *Rutlin*, 435 S.W.3d at
> 130. Appellate counsel has no obligation to present every issue asserted in
> the motion for new trial when she makes a strategic decision to cull some
> arguments in favor of others. *Schallon*, 435 S.W.3d at 124.

The Missouri Appeals Court concluded this ineffective assistance of counsel

claim was without merit:

> A trial court's ruling on a motion *in limine* preserves nothing for review
> unless objections are made at the appropriate time during the case. *Rutlin*,
> 435 S.W.3d at 134. In addition, when the trial court sustains an objection on

a motion *in limine*, the proponent of the evidence must make an offer of proof at trial. *Id.* Here, the defense did not seek to introduce any evidence regarding the alternate suspect. Accordingly, there followed no objection from the State, and no offer of proof from the defense. The alleged error, which the movant now claims should have been raised on appeal, was not preserved for appellate review. *Id.* Appellate counsel is not required to raise claims based on unpreserved issues that could only be considered for plain error. *Id.* Because plain- error review is discretionary, the movant cannot show that this Court would have considered the claim. *Id*. Counsel cannot be deemed ineffective for failing to raise an unpreserved claim of error on appeal. *Id.*

Furthermore, when the alleged error was not preserved, the right to relief based on ineffective assistance of appellate counsel tracks the plain-error rule. *Id.* at 133. That is, appellate counsel's alleged error must be so substantial as to amount to a manifest injustice or a miscarriage of justice. *Id*. No such error exists here.

Several weeks after the deaths of Welty and Reid, Boner reported to police that a woman named Sandy who lived in St. Mary, Missouri had sold methadone to Welty, Reid, and Boner. Detectives initially believed that another woman in the area with known connections to methadone use, also named Sandra and who purportedly bears some resemblance to the movant, may have been the person involved in the crime. Police obtained an arrest warrant naming the other Sandra, but identifying the location of the suspect provided by Welty's mother and Boner, as explained below. There Lieutenant White of the St. Genevieve County Sheriff's Department encountered the movant, arrested her, and seized several bottles of methadone. The State filed a motion *in limine* to prevent the defense from introducing evidence at trial regarding either the other woman named Sandra or the warrant initially issued for her arrest. The trial court granted the State's motion.

No evidence tied the other woman named Sandra to the crimes. The movant seeks to characterize as evidence the initial conjecture of law enforcement that the person named "Sandy" from whom Boner, Welty, and Reid bought methadone was another woman named Sandra. But police speculation about a different suspect in itself does not constitute evidence directly connecting another person to the crime.

In addition, evidence adduced at trial overwhelmingly pointed to the movant as the person named "Sandy" who sold methadone to Boner, Welty, and Reid. The friend in whose home Welty died testified that Welty was in a delirium, and repeatedly said something about that "Dallas girl." Welty's mother testified that shortly after her son's death, she received a telephone call from a woman who identified herself as "Sandy" and spoke of selling her mobile home to Welty. The woman left her address and phone number with Welty's mother, who relayed the information to police. Boner testified that she, Welty, and Reid met "Sandy" while looking at a house listed for sale in St. Mary, and at trial Boner identified the movant as the person whom they met. Boner stated that the movant took the three friends to her mobile home where she sold them methadone. Another witness also identified the movant at trial. He described encountering the movant, another woman, and two men late in the afternoon in question at a house he had just contracted to buy in St. Mary. Lieutenant White testified that he went to the mobile home at the address provided by Welty's mother, where he encountered the movant, arrested her, and seized several bottles of methadone.

Finally, "[e]vidence that merely casts suspicion upon another person or raises a conjectural inference that someone else may have committed the crime in question is inadmissible." *Rutlin*, 435 S.W.3d at 135. Here, the motion court's ruling finds further support from the lack of any evidence connecting the other Sandra to the events in question or to the victims. Appellate counsel cannot be deemed ineffective for failing to challenge the trial court's decision to preclude the defense from implicating another person absent proof of some act directly connecting the person to the crime. *Id.*

The Missouri Court of Appeals in reviewing the post-conviction motion denial considered Petitioner's claim of ineffective assistance of counsel, and its conclusion is neither an unreasonable interpretation nor contrary to clearly established federal law. Consequently, this ground for relief must be denied.

### **Ground Two and Four** – Excessive Sentence

Grounds Two and Four, are closely related and will be analyzed together. In Ground Two, Petitioner argues her sentence is excessive for the convicted crimes.

14

She claims "she did not force victim to consume drugs and was not present when victim ingested methadone. Victim was purchasing methadone from several people, no clear indication whose methadone consumed." In Ground Four, Petitioner argues cruel and unusual sentencing due to prejudice of the trial court because of her previous federal sentence. Petitioner did not raise these claims on direct appeal or in her post-conviction motion. She states she didn't raise these issues because she thought her attorney was doing so.

Unpreserved claims cannot serve as a basis for reversing the judgment of conviction. A claim must be presented at each step of the judicial process in state court in order to avoid procedural default. *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994). In order for this Court to consider this claim as not procedurally defaulted, Petitioner is required to demonstrate good cause and actual prejudice. *Murray*, 477 U.S. at 478.  The Petition contains nothing to demonstrate good cause for failing to brief this issue nor does the Petition address any actual prejudice for the failure. To the extent Petitioner is claiming her counsel was ineffective for failing to raise these issues, this argument also fails.

> Federal habeas courts reviewing convictions from state courts will not
> consider claims that a state court refused to hear based on an adequate and
> independent state procedural ground. A state prisoner may be able to
> overcome this bar, however, if [s]he can establish "cause" to excuse the
> procedural default and demonstrate that he suffered actual prejudice from
> the alleged error. An attorney error does not qualify as "cause" to excuse a
> procedural default unless the error amounted to constitutionally ineffective
> assistance of counsel. Because a prisoner does not have a constitutional right
> to counsel in state postconviction proceedings, ineffective assistance in those

15

proceedings does not qualify as cause to excuse a procedural default. See
*Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640
(1991).

In *Martinez v. Ryan,* 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012),
and *Trevino v. Thaler,* 569 U.S. 413, 133 S.Ct. 1911, 185 L.Ed.2d 1044
(2013), this Court announced a narrow exception to *Coleman* 's general rule.
That exception treats ineffective assistance by a prisoner's state
postconviction counsel as cause to overcome the default of a single claim—
ineffective assistance of trial counsel—in a single context—where the State
effectively requires a defendant to bring that claim in state postconviction
proceedings rather than on direct appeal. The question in this case is whether
we should extend that exception to allow federal courts to consider a
different kind of defaulted claim—ineffective assistance of appellate
counsel. We decline to do so.

*Davila v. Davis*, 137 S. Ct. 2058, 2062–63 (2017).

Consequently, the claims raised in Grounds Two and Four are procedurally
barred from habeas review and will be denied.

## **Ground Three – New Evidence**

In Ground Three, Petitioner claims that she has "unused and new evidence
which affect the trial outcome." In support, she states "new witnesses not
previously called to testify[,] photographs not used [and] issues not raised original
trial including lab results and testimony." She justifies not raising these issues in
the state court proceedings because she thought her attorney was doing so.

A claim must be presented at each step of the judicial process in state court
in order to avoid procedural default. *Jolly*, 28 F.3d at 53. As described at length
above, defaulted claims of ineffective assistance of counsel cannot excuse a
separately defaulted claim. *Davila,* 137 S. Ct. at 2062–63. In order for this Court to

16

consider this claim as not procedurally defaulted, Petitioner is required to demonstrate good cause and actual prejudice. *Murray,* 477 U.S. at 478. Petitioner fails to demonstrate good cause for her procedural default, and she cannot establish any prejudice for the failure from a constitutional error. Nor has she shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim. Although she claims she has new evidence, Petitioner does not state what the new testimony would reveal or what the photographs and/or lab results would show. Petitioner has not presented any *reliable* new evidence "that affirmatively demonstrates that [s]he is innocent of the crime for which [s]he was convicted." *Abdi*, 450 F.3d at 338. Especially considering the relevant facts affirming the conviction and sentence summarized above, she has not met this burden or shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.* Therefore, Ground Three is procedurally defaulted and will be denied.

## Conclusion

For the foregoing reasons, the Court concludes that the grounds Two, Three and Four Petitioner's Petition for Writ of Habeas Corpus are procedurally barred. Ground One fails on the merits.  All grounds are denied in all respects.

## Certificate of Appealability

When a district court issues an order under § 2254 adverse to the applicant it "must issue or deny a certificate of appealability." R. Governing Section 2254

Cases in the U.S. Dist. Cts., R. 11. If a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claims, the Court should issue a certificate of appealability if the prisoner has shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*; see also *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (interpreting *Slack* in the following manner: "1) if the claim is clearly procedurally defaulted, the certificate should not be issued; 2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, 3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted").

For the reasons stated, the Court finds that Petitioner's claims in Grounds Two, Three and Four are procedurally defaulted. The Court also finds that the denial of Petitioner's claim in Ground One is based on such a clear record and well-settled law that no reasonable jurists would debate that no constitutional right of

Petitioner was denied. Therefore, no certificate of appealability will issue in this case.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus [Doc. No. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 23rd day of March, 2023.


_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE